## Simons, Trustee, et al. v. Vaughn & Blackwell.

### (Decided June 2, 1915.)

### Appeal from Webster Circuit Court.

1. Insurance—Foreign Insurance Company—Guaranty by Agent.— An agent of a foreign insurance company, which is not authorized to do business in this State, guarantees the solvency of the company, and its performance of the contract of insurance.
2. Insurance—When Agent Liable for Loss.—Where a loss occurs, which is insured against in a foreign insurance company, not authorized to do business in the State, the agent of the company, through whom the insurance is procured, is liable for the loss, if the company refuses or fails to perform its contract.
3. Insurance—Aiding Foreign Insurance Company Not Authorized to do Business In This State.—Any one, who directly or indirectly, aids or assists a foreign insurance company, not authorized to do business in this State, in placing a policy of insurance in this State, is liable for any loss, which occurs under such policy, in case of the insolvency of the company or its failure to perform the insurance contract, unless the insured knew at the time the policy was procured, that the company had no authorty to do business in the State, and that the person so aiding and assisting was not an agent of the company, and had no authority to act for it, and was acting merely as an accommodation to the insured.
4. Insurance—Liability of One Acting for Foreign Company Not Authorized to do Business In This State.—The agent of a foreign insurance company, or any one who assumes to act for it, where the company is not authorized to do business in the State, and the insured by such company are not in pari delictu, and the agent or one assuming to act as agent, must know whether or not the company is authorized to do business in the State, while the insured has a right to assume that the company is authorized to do business in the State, without actual knowledge to the contrary.

LAFFOON & WADDILL for appellants.

BAKER & BAKER, HUNT & WITHERS and BOURLAND & BLACKWELL for appellees.

Opinion of the Court by Judge Hurt—Reversing.

The appellants, Max Freedberg and S. D. Simons, trustees for the creditors of Freedberg, sued the appellees, Leaman Vaughn and J. B. Blackwell, as partners, under the firm name of Vaughn & Blackwell, and sought to make them liable, as agents of the Franklin Fire Insurance Co., of Delaware, on account of a loss insured against by a policy, issued by the insurance company, it being insolvent and refusing to pay the loss.

The issues being properly made by the pleadings, a trial was had, which resulted in a verdict of the jury, and a judgment of the court in favor of the appellees, and the petition of appellants was dismissed. The appellants filed grounds for a new trial, which were overruled, and they now appeal to this court.

The grounds relied upon for a reversal are that the court erred in admitting incompetent evidence offered by the appellees, and rejecting competent evidence offered by the appellants; in instructing the jury, and in refusing to instruct as offered by appellants; and because the court erred in overruling appellant's motion, at the conclusion of all of the evidence, to instruct the jury to return a direct verdict in favor of appellants. The evidence was substantially as follows:

The appellant, Freedberg, testified that the appelloes were engaged in the business of insurance agents for several insurance companies, in which he carried policies of insurance, and that one of the policies in the sum of $2,000.00, having been cancelled, that the appellee, Blackwell, notified him of it, and he expressed the desire to have insurance in the place of it, when Blackwell said to him, "I will see that you get some more insurance." He had informed the appellees theretofore, that when a policy carried by any company represented by them lapsed, to reinsure him, and that they had attended to so doing, and would inform him, and he would pay the premiums when the policies were delivered to him, which he kept in a safe, and really did not know in what companies the insurance was carried, as he made no examination of the policies; that he did not know that the Franklin Fire Insurance Co. was not authorized to do business in the State, or anything about its solvency, neither did he know where the appellees procured the policies or how; that he never questioned

them as to what companies they represented, and believed they were agents for the Franklin Fire Insurance Co., as they delivered the policy to him and collected the premium; that he had no information that appellees were not agents of the Franklin Fire Insurance Co.; that the policy was handed to him by Mr. Blackwell, one of the appellees, and that he did not give it any attention, and did not know at the time what company it was in; that he left it to the appellees to put the policy in whatever company they desired, and they did not tell him what company had issued the policy, and that he paid the premium to appellees, and did not learn, until after his loss by the fire, that the Franklin Fire Insurance Co. was insolvent, or was not authorized to do business in the State; about a week after his loss the appellees told him that the company did not have a license to do business in Kentucky; they, also, told him that they had telegraphed to the companies in which the policies were held, in regard to the fire, and that they would send an adjuster; that appellees also told him, after his loss by the fire, that they had written policies for others in the Franklin Fire Insurance Co., but had returned the premiums to them.

H. D. Simons testified that after he qualified as trustee for Freedberg, that Vaughn & Blackwell stated to him that the policies held by Freedberg were all in good and solvent companies, and had suggested to him to leave the policies in their custody, as the adjusters would want to see them, and he took a receipt for the policies, among which was the one in the Franklin Fire Insurance Co.; that the policies were already in the custody of the appellees, having been lodged with them by Freedberg after the loss. After that time, Blackwell wrote to Simons a letter, in which, among other things, he said: "I, as agent for the insurance companies, will quietly receive the checks, etc." In another letter written Simons by Blackwell, he said: "We have submitted proof of the loss to Franklin Fire Insurance Co., but doubt very much the reliability of this company," and in another letter from Blackwell to Simons, he said: "We have written insurance commissioner of Delaware, and he says the license has been revoked. We have reported the loss to Anthony, who issued the policy, and he directed that proof be made up and sent to him, and he would serve notice on the company, and that he,

Blackwell, had had Mr. Cromwell, an adjuster, to make up the proof of the loss and mail it to Anthony." In another letter from Blackwell to Simons, he mentions that he returns to him the Franklin Fire Insurance Company policy, on which "we have tried to realize."

Leftwich, a witness for appellant, testified that Blackwell said to him, that he had secured the policy for Freedberg, and at the time he secured the policy he did not know anything about the company; that he did not know whether it had been authorized to do business in Kentucky or not; that he had received the premiums and got a commission for writing the insurance policy; that he should have inquired of the insurance department.

Other evidence was introduced by appellants showing the insolvency of the Franklin Fire Insurance Co., and the fact that it was not authorized to do business in Kentucky at the time the policy was issued.

The appellee, J. B. Blackwell, testifying for appellees, stated that he and the appellee, Vaughn, was a partnership engaged in doing an insurance business; that they had a recording agency in which were three companies, the Connecticut of Hartford, the Germania of New York, and the National Union of Pittsburg; that they were authorized by these companies to write and sign and deliver policies of insurance; that Freedberg carried a policy of $2,000.00 in the Fireman's Insurance Co., which was not represented by the appellees, but by one Lambe; that during the time Freedberg had been in business in the town of Clay the appellees had been able to secure the greater part of his insurance in the three companies that they represented; one of the policies carried by Freedberg upon his stock was for $2,000.00, and was in the Connecticut of Hartford, another was for $3,000.00, and in the Germania of New York, and that about the 7th of September they wrote a policy for Freedberg upon his stock of merchandise for $2,000.00 in the National Union of Pittsburg, but within a very few days this policy was cancelled by the company, which directed the appellees to take up the policy and return it at once, and that he, Blackwell, informed Freedberg of this fact, and that he did not think they were in shape to take care of that additional insurance in their agency. He told Freedberg that we have a letter on our desk, addressed to the bank, from one

Mr. Anthony, of Brooklyn, New York, who claims to be an insurance broker, and able to take care of any surplus insurance that we might have or that anyone might have. With this letter were inclosed some blank forms for making applications for insurance, and I told Mr. Freedberg "that it might be that we could secure for him from Mr. Anthony a policy to take the place of the National Union, and if he so desired we would make out this daily report, or he could make it out and sign it and mail it to Mr. Anthony, and see whether or not he could secure a policy, and I told him at the time that I knew nothing about what company Mr. Anthony represented, or what company the policy would be in when it came, and he said that he wanted other insurance, that he needed about $2,000.00, and he believed he would do that, and I went back with him across the street into the bank, where Mr. Vaughn prepared the application and Freedberg signed it. It was an application to Anthony for an insurance policy. We mailed it to Anthony, and in about six or seven days the policy came, and I took the policy over to Mr. Freedberg and delivered it to him out in front of his store, and I told him at that time that I knew nothing about the company; in fact, I had never heard of it." He accepted the policy, and there was something said between us to the effect that we supposed where the man needed the insurance that possibly the company would be worth the premium. The circular which came from Anthony represented that he would pay to anyone placing insurance twenty-five per cent. of the premium, as a commission for so doing. He did not know what companies Anthony represented. Freedberg paid the premium, amounting to $37.50, and appellees retained twenty-five per cent. of it for their commission, and forwarded the remainder to Anthony. He further stated that appellees had mailed to Anthony three or four applications for insurance before this time, and had received and delivered the policies, one of which was in the Franklin Fire Insurance Co., collected the premiums and retained the commissions, but after Freedberg's loss, and they found the company was not solvent, they returned the premiums to the persons; that the agency of Vaughn & Blackwell collected the premiums; that he did not know at that time that the company did not have authority to do business in the State.

The appellee, Leaman Vaughn, testifying for appellees, after stating about the cancellation of the $2,000.00 policy held by the appellant, Freedberg, in the National Union Fire Insurance Co., said:

"Mr. Blackwell went over and told Mr. Freedberg; he went over to get the policy, and got the policy, and he made the contract with Mr. Freedberg to apply to this man, Anthony, for the $2,000.00 insurance; so Max Freedberg said he would make the application to Mr. Anthony for the insurance, and, of course, he did not have a typewriter, and did not understand making up the form and application, and I made up the application myself, and copied the form from one of the other policies to make them uniform, and he made up this application on that blank form that Mr. Anthony had. * * * And when this was completed Mr. Freedberg signed this himself. We forwarded this application to Mr. Anthony, and I wrote him a letter stating that we enclosed an application of Max Freedberg for $2,000.00 insurance."

He further stated, that at the time, he did not know what company the policy applied for would be in, as the application was made to Anthony, and he told Freedberg, that he did not know what company it would be in, or whether solvent or not; that he could take it or reject it, whichever he wanted to, and we made up the application to help him to get the insurance as an accommodation to him. When the policy returned in five or six days, it came to the appellees, with a letter to them from Anthony, and a statement made out against Vaughn & Blackwell for the benefit of those concerned. The statement showed the amount of the premium, and the amount of the deduction of twenty-five per cent., and the net amount to be forwarded to Anthony. The policy did not have a gasoline permit attached to it, and he filled out a form used by the Germania Insurance Co., for that purpose, and sent it to Anthony, with a letter, stating that a permit ought to be attached. Anthony simply cut off at the bottom the name of the Germania Insurance Co., and returned the permit to appellees, with directions to attach it to the policy, which they did. The policy was then, by them, delivered to Freedberg, and Freedberg gave them a check for the premium of $37.50. They then communicated with the Franklin Fire Insurance Co. to know if Anthony was a duly au-

thorized agent of the company, when they received a telegram from the company stating that he was. They then sent the premium, less their commission of twenty-five per cent., to Anthony.

He further stated that the appellees did not have a contract of any kind with Anthony or with the Franklin Fire Insurance Co.; that they had no authority to represent that company, and had no license permitting them to do so; that before this transaction two other persons, through their assistance, had procured policies through Anthony in the Franklin Fire Insurance Co. In the circular which the bank had received from Anthony it was stated that a rate of insurance would be made satisfactory to the insured; that appellees did not know at that time, nor until after the losses by Freedberg, that the Franklin Fire Insurance Co. had no authority to do business in the State. In the circular received from Anthony he said he would allow commissions of twenty-five per cent. upon the business, and said that the companies were good, strong, solvent companies, and enclosed in the letter were probably a dozen blank applications for insurance. The letter which accompanied the policy in controversy was addressed to Vaughn & Blackwell. When he prepared the application for the policy Mr. Freedberg was not present, but was just across the street, and when he got the form ready he called to him and told him that it was ready, and he came over and signed it and "we fixed it up."

Proof was, also, made for the appellees, that after Freedberg's loss he brought his policies, including the one in the Franklin Fire Insurance Co., to the bank where appellees were employed, one of them as cashier and the other as assistant cashier, and placed them in the bank in their custody. They immediately informed the insurance companies of the losses, and no adjuster representing the Franklin Fire Insurance Co. having come, the appellees secured the services of Mr. Cromwell, an adjuster, to make out the proof of the loss, for which appellees paid him, and that was sent to Anthony.

Other proof was introduced for the appellees corroborating their statements in regard to the transaction, and when all of the evidence was heard, appellants moved the court to instruct the jury to find a direct ver-

dict for them, which motion was overruled and the appellants excepted.

A proper determination of this case involves the question of whether, in the first place, the appellees were agents of the Franklin Fire Insurance Co., and in the second place, where an agent, who procures the issual of a policy of insurance to one in this State, by a company not authorized by law to do business in this State, and when the agent has no authority of law to effect insurance for the company, in this State, and therefore both the company and the agent violate the law, and the company is insolvent or refuses to pay a loss, insured against by the policy, is the agent personally liable for the loss, and if so, under what circumstances?

It is conceded in the proof, by both sides, that the Franklin Fire Insurance Co. was a foreign corporation, organized under the laws of the State of Delaware; that it was insolvent, and had never complied with the requirements of the insurance laws, and was not authorized to do business in this State; and the appellees, as a matter of course, were not licensed and had no authority of law to solicit or to secure, or to assist in securing business for it in the State. They had no contract with it to act as agents for it. They were, however, informed by it, after the policy was delivered to them, that Anthony was its duly authorized agent. They claim that the only transactions they had, touching the policy of appellant, was had by them with Anthony, and that they, in fact, were not acting for Anthony, but were acting as agents for appellant, as a mere accommodation to him. Under the provisions of the common law they would doubtless have been entitled, under the evidence, to have had the question, as to whether or not they were the agents of the company, submitted as an issue to the jury. The fact of their being engaged in the business of insurance agents, and having given the appellant knowledge of the offers of insurance made by Anthony, and the preparation and mailing of appellant's application for the insurance, their receipt of the policy by mail, and their letter to Anthony, accompanied by a filled-in form for the gasoline permit that should be attached to it, the attachment of the permit to the policy by them upon its return; their receipt of the account for the premium; the collection of the premium by them, and the retention of twenty-five per cent. of it for their

commissions in securing and delivering the policy; their delivery of the policy; their procurement of policies in the same company previous to this one, for two other persons, and the collection of these premiums, and retention of the commissions; and the further fact that the proposition from Anthony contained an offer of twenty-five per cent. of the premiums for their services in securing insurance, was very persuasive evidence of their agency, although they testified that they were not agents of the company, and were only acting as an accommodation for appellant, and at his request to assist him in securing the policy. They were still confronted with the unexplainable fact, that they were being paid by the insurance company to do acts of accommodation for appellant.

By the common law, an agent was one, who, by the authority and on account of another, undertook to do something for another, and to render an account of it. While, as stated, by the common law rules, the appellees would have been entitled to have the issue, as to whether they were agents for the company or for appellant, submitted to the jury, the statute of this State seems to settle the question beyond dispute.

In 31 Cyc., 1216, it is said:

"While a mutual intention to create the relation of principal and agent is generally an essential element of agency, still it is to be observed that where the facts are such as to create an agency as a matter of law, the actual intention of the parties and the name they give to their relation are immaterial; they cannot agree that facts, which in law establish the relation of agency, shall not establish that relation, or shall establish a different relation."

Section 633, Kentucky Statutes, is as follows: "Licenses to agents of foreign companies must be renewed annually in the same manner as original licenses, upon a finding by the commissioner that the company represented by the agent has fully complied with the law, and maintains its required capital or reserve; and whoever solicits and receives application for insurance on behalf of any insurance company, or transmits for any person other than himself, an application for insurance, or a policy of insurance to or from such company, or advertises that he will receive or transmit the same, or who shall, in any manner directly or indirectly

aid, or assist in transmitting the insurance business of any insurance company, shall be held to be an agent of such company, within the meaning of this article, anything in the policy or application to the contrary notwithstanding; and any person acting as the agent of any company within the meaning of this section, without first procuring and having a license from the commissioner to act as such agent, * * * shall be deemed and held to be guilty of a misdemeanor, etc."

In the case of Com'th. v. Gaither, 107 Ky., 572, one Gaither was indicted for a violation of the statute, *supra,* by soliciting insurance business for a foreign company, which was not authorized to do business in this State, and for which Gaither had no license to act as its agent. The proof showed that Gaither had been employed by one Greer to solicit insurance business for the company, and that he had no contractual relations with the company, and the circuit court instructed the jury, in substance, that before Gaither could be held as an agent of the company, that he must have been appointed such by the company, or the company must have known of the service that he rendered Greer, and ratified it; but this court reversing the judgment because of this instruction, said: "At the common law, an agent was one who undertook to transact some business for another by the authority and on account of the latter, and to render an account of it; but the statute is much broader in its terms and application, and holds one to be an agent, 'who solicits and receives application for insurance on behalf of any insurance company, or who shall in any manner directly or indirectly, aid or assist in transmitting the insurance business of any insurance company,' whether he had been authorized to act as such agent by the company or not. The object of the law is to protect citizens of this State from bankrupt and fraudulent insurance companies, as well as to secure the payment of some revenue from foreign insurance companies for the right to do business in this State, and the statutes would be futile to affect these needs, if unlicensed persons could solicit insurance and transact the business of the company as sub-agents, and escape the penalty denounced by the statutes, because they had not received their appointment directly from the company, or unless the company knew such services were rendered at the request of their authorized agent."

For the protection of the citizens of the State and to keep them from being victimized by insolvent and fraudulent insurance companies, the Legislature has provided various requirements for the insurance companies, for the purpose of placing information as to their solvency within the knowledge of the insurance department of the State, and to provide a means, which can be reached by the policy holders, to secure the payment of the policies, and if litigation is necessary to enable a policy holder to secure his rights in the courts of this State, and these requirements the insurance companies must comply with before they can obtain authority to do business in the State, and the agents of such companies must have authority from the insurance department to do business for the companies; hence, there can be no excuse for any person "who solicits or receives applications for insurance on behalf of any insurance company, or who shall in any manner, directly or indirectly, aid or assist in transmitting the insurance business of any insurance company" to do so, without knowing that he acts in violation of the law. To allow an excuse for a person who violates this statute, and to allow him to escape the consequences of his act, either penal or civil, under a claim that he was acting as the agent of some other person, who was the agent of an unauthorized company, or that he was doing mere works of accommodation for the insured, when he was being paid for it by the company, would be to nullify all the beneficial provisions of the statute, and to allow its systematic violation, under excuses which are mere subterfuges, and could be made use of systematically to avoid all the requirements of the law and to escape all the penalties, and at the same time do as much business in the State as if they had complied with the laws.

The uncontradicted facts proven, in the case at bar, when the laws of the State are applied to them, and as a matter of law, show the appellees to have been the agents of the insurance company in the transaction of its business with the appellant. They, both, directly and indirectly, aided and assisted in transacting the business of the insurance company; received the application, transmitted it; received the policy, delivered it; collected the premium, transmitted it; and received a compensation for so doing; caused the proof of the loss under the policy to be made up, and transmitted it. In

the further discussion of the questions at issue, we shall treat the appellees as the agents of the insurance company.

What civil liability is imposed upon an agent for an insurance company which is not authorized to do business in the State, and the agent has not a license to do business for it, when a loss occurs, which is insured against by a policy in such company, and the company is insolvent, is a matter of more difficulty, under the facts of this case.

The general rule applicable to all transactions is, that where one of two innocent persons must suffer by the act of a third person, the one which enabled the third person to occasion the loss must sustain the loss.

The case of Vertrees v. Head & Matthews, 138 Ky., 83, was a case in which the facts were very similar· to the case upon trial, although in one essential respect they were different. In the case at bar, there is no evidence conducing to show that appellant knew that the Franklin Fire Insurance Co. did not have authority to do business in the State. In the case, *supra,* this court said: "And so we think that to protect citizens of this State from being defrauded by irresponsible companies, and to carry out the declared purpose of our statute, and aid in preventing such companies from having agents in this State, we are fully justified in holding that any person, who undertakes to act as agent for a company not authorized to do business in this State, thereby personally assumes that the company for which he acts is solvent and able to perform its agreements. If it is not, he makes himself individually liable for any loss sustained on account of its insolvency, or failure to fulfill its contract, entered into with persons who did not know that the company was not authorized to do business in the State, and who believe that the person assuming to act for it was its duly authorized agent." The court further held, that if Head & Matthews informed Vertrees, that they were not agents of the company, and had no authority to act for it, and Vertrees knew the company had no authority from the insurance department to do business in the State, and they placed the insurance with the company as a mere act of accommodation to him, they were not liable for the loss.

In Preston v. Preston, 163 Ky., 566, this court approved the doctrine of the case of Vertrees v. Head &

Matthews, *supra,* and held that irrespective of any false representations in regard to its solvency, any one who undertakes, in violation of a statute, to act as agent for an insurance company not authorized to do business in this State, personally guarantees the solvency of the company, and is liable for loss sustained because of its insolvency, or failure to perform its contract to anyone contracting with it through such agent, without knowledge that the company was not authorized to do business in the State, and believing that the agent was duly authorized to act for it. Of course, if the company is not authorized to do business in the State, it necessarily cannot have an agent in the State duly authorized to act for it, and represent it in insurance transactions in the State. In the case at bar, conceding that appellees informed appellant, that they were not agents of the company, and that neither he nor they knew that the company was not authorized to do business in the State, and that they informed him that he could apply, with their assistance, and secure the policy, and that he could then take or reject it, as he saw fit, then what, if any, was the liability of appellees for a loss covered by the policy? The fact that appellees had the offer of Anthony to give them twenty-five per cent. of the premiums for placing the insurance, and that they were paid the sums out of the premium, seems to be conclusive that they were not acting for the mere accommodation of appellant. It will be observed that the case of Vertrees v. Head & Matthews, *supra,* holds that one who assumes to act as agent, and through whom was secured the insurance for the insured from an unauthorized company could only escape liability when the insured knew that he was not the agent of the company, and knew that the company was not authorized to do business in the State, and the person was only acting as an accommodation for the insured. The undisputed facts make the appellees liable. The appellant did not know that the company was without authority to do business in the State, and, as a matter of law, the appellees became the agents of the company when they suggested and prepared the application for the insurance, and they did not do it for the mere accommodation of appellant. Appellant was without knowledge of the company's want of authority to do business in the State, and of appellees' want of authority to do the acts, which in law, made

them agents of the company. When the appellees did the acts constituting them agents of the company, and which acts upon their part were in violation of the law and without which appellant would not have received the policy, nor sustained the loss by reason of the insolvency of the company, they guaranteed the solvency of the company, and the performance of its undertaking. Good public policy forbids a contrary holding.

It is insisted that appellees, when the application was made through them for the policy, did not know in what company the policy would be, but that reason for their want of liability ended when they received the policy. They knew then what company issued it, and it was their duty, then to have refused to deliver it or to collect or remit to the company the premium. Their want of knowledge of the fact that the company could not lawfully do business in Kentucky is no answer to a claim of liability under the law, because it is the duty of one who assumes to act for a foreign insurance company, either as its duly appointed agent, or an agent by operation of law, to know whether the company can lawfully do business in the State. If he does not know, he must refuse to act until he has information. They, however, knew that they had no license to act as agents for such a company, and that they must have a license to act for such a company, which appellant did not know. The law imposes a different obligation upon the agent of a foreign insurance company, or one assuming to act as such agent, from what it imposes upon the insured. The agent and the insured are not in *pari delictu.* This is the policy of the law, founded upon reasons of good public policy. When policies are obtained for one, by persons engaged in the business of insurance agents, he has a right to assume that they are issued by companies, which may lawfully do business in the State. Hartman v. Hallowell, 126 Iowa, 649. When appellees delivered the policy to appellant, there was nothing in the language used by them to give him information that the company could not lawfully do business in the State, and he had a right to assume that it did.

In the case of Lathan v. Harrod, 71 Kans., 568, although there was no statute expressly making the agent personally liable, yet the court held him so, upon the ground that he procured insurance for the complainant in a company not authorized to do business in the State,

and held that the agent and insured were not in *pari delictu,* and quoted with approval the following from 15 A. & E. Encyclopedia of Law, 1004: "Where contracts or transactions are prohibited by a positive statute enacted for the sake of protecting one set of men (the one from their situation and condition being liable to be imposed upon by the other), the parties have been held not in *pari delictu,* and in furtherance of such a statute, the person for whose protection the statute was enacted, has been permitted after the transaction to recover money or property parted with by him. 9 Cyclopedia L. & P., 552."

In Morton v. Hart, 88 Tenn., before a statute was enacted in that State expressly making an agent personally liable for losses insured against in foreign insurance companies, not authorized to do business in the State, the court said:

"The defendants were undertaking to do an unlawful business. In such undertakings they must be held to guarantee the solvency of the concern they represent to the extent of the requirements of our statutes cited, and that losses will be paid here. The law was intended to protect the citizen policy holder, and give him redress in the courts of this State. * * * And if loss occurs the agent must respond to the insured and look to his principal for indemnity."

The cases of Woolwine v. Mason, 157 S. W., 682 (Tenn.); Noble v. Mitchell, 100 Ala., 530; and Price v. Garvin (Texas Civil Appeals), 69 S. W., 986, were decisions rendered in the courts of each of those States, since statutes have been enacted rendering the agents personally liable for losses covered by policies, in companies not authorized to do business in the respective States, and in each of the cases it was held, that the fact that the policies were procured by the agents from insurance brokers, did not relieve the agents of liability.

Section 466, Ky. Statutes, provides that: "A person injured by the violation of any statute may recover from the offender such damage as he may sustain by reason of the violation, although a penalty or forfeiture for such violation be thereby imposed."

Being without authority to act as an agent for the insurance company, and the company without authority to do business in the State, the acts of appellees, in ob-

taining the policy for appellant was in violation of the statute law of the State.

We, therefore, conclude that where a loss is sustained, which is insured against by a policy in a foreign insurance company, which has no authority to do business in this State, and refuses to keep its contract to pay the loss, or is insolvent, there can be no doubt, that the agent through whom the insurance was secured, if duly appointed by the company, is liable for the loss; and any one through whose aid and assistance such company places a policy of insurance in this State, and thereby makes himself an agent of such company, as provided in Section 633, Ky. Statutes, and who has no license to act for such company is liable for loss under any policy which he aided or assisted in procuring for such company, unless the insured, at the time such policy was procured, knew that such person was not an agent of such company, and knew that the company was not authorized to do business in this State, and the person aiding and assisting, as above stated, did so merely as an accommodation for the insured.

Upon the uncontradicted evidence, the court below should have instructed the jury to find a direct verdict for appellants, and given, also, an instruction defining the measure of damages. The instructions given not being in accord with the views, herein, expressed, the judgment appealed from is reversed, and cause remanded to the court below for proceedings in conformity to this opinion.