## Barry v. Garth Educational Society, et al.

(Decided January 9, 1920.)

Appeal from Fayette Circuit Court.

Mortgages—Denial of Validity.—The appellant having acquired two lots by purchase from C., upon which she had executed a mortgage, under agreement that he would pay the mortgage lien, cannot deny the validity thereof.

R. S. CRAWFORD and A. B. THOMPSON for appellant.

FORMAN & FORMAN and MATT WALTON for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Berry Crosthwait died intestate the owner of twenty-one parcels of real estate in the city of Lexington. After his death, in an attempt to partition his real estate, the two adjoining lots involved in this action were conveyed to his son, Mat Crosthwait, by the other heirs. This son conveyed these two lots to J. T. Farmer, who executed a mortgage on same to the appellee, Garth Educational Society, to secure a loan of $1,250.00, and later conveyed same to Mary E. Crosthwait, who assumed the payment of the mortgage. Thereafter Mary E. Crosthwait conveyed the same property to appellant, J. F. Barry.

The mortgage not having been satisfied when due, the Garth Educational Society instituted this action against Farmer, Mary E. Crosthwait and the appellant, J. F. Barry, to enforce its lien. From a judgment ordering the sale of the two lots to satisfy appellee's mortgage Barry alone is appealing.

He claims title to the two lots, superior to appellee's mortgage lien, upon the following facts: Prior to the

conveyance of these lots to Mat Crosthwait by the other heirs of Perry Crosthwait, the latter's administrator had filed a suit to settle his estate, and Forman and Forman had filed another suit against the heirs of Perry Crosthwait asserting liens upon his lands. The two actions had been consolidated and a *lis pendens* notice filed in the clerk's office pursuant to section 2358a Kentucky Statutes, stating that the interests of all of the heirs in all of decedent's real estate, including the interest of Mat Crosthwait in the two lots involved here, were affected and involved in those actions, but this notice was released of record as to these two lots by the plaintiffs in the consolidated actions at the time the mortgage was executed to the Garth Educational Society.

Notwithstanding this release a judgment was entered in the consolidated actions adjudging liens to the extent of about $1,400.00 on these two lots and ordering them sold to satisfy same. Pursuant to this judgment the master sold one of these lots to Mary E. Crosthwait for the amount of the judgment and no exceptions having been filed the sale to her was confirmed. On the same day the sale was confirmed the assignment of her purchase to appellant, J. F. Barry, was filed and this lot was conveyed to him by the master.

Appellant seeks to rest his title solely upon the master's deed, claiming the attempted release of the notice by plaintiffs in the consolidated actions was ineffective and that appellee having notice of the proceedings is bound by the court's action despite the attempted release, but we need not pass upon this question, since appellant in fact purchased of Mary E. Crosthwait and not at the decretal sale, and is bound by the contract he made with her regardless of how she obtained title.

At the time Mary E. Crosthwait assigned her purchase to Barry for the lot sold by the master, her mortgage to appellee upon both lots was of record and she testifies that when she later conveyed the two lots to Barry it was in fulfillment of their agreement that he was to have both lots and pay her debts against same, her testimony on the question being as follows:

"Q. When you made the trade with Mr. Barry what was the consideration that he was to pay you and what did he agree to do with reference to the property? A. When I signed the deed for that property to go I was to be free and I was not to owe a cent. Everything was

to be paid. Q. Now where were you when you made the deed or trade with Mr. Barry about this property? A. One time I signed a deed over there at Hobbs' office. Q. Was Mr. Barry there? A. Yes. Q. The deed you signed was the deed to Mr. Barry was it not, for the property? A. That was what I think it was. Q. At the time you signed that deed what was said about the note against that property which you owed the Garth Educational Society? A. Mr. Barry was to pay it. Everything was to be paid when that deed was signed. Q. Mr. Barry agreed to pay that note when you signed that deed? A. Everything. Q. Did you tell him where you had gotten the property? A. Yes. Q. You told him you bought it from Mr. Farmer? A. Yes. Q. Did you tell him that you had given a note to the Garth Educational Society and also a note to Mr. Farmer when you bought the property from Mr. Farmer? A. Mr. Hobbs told him. I didn't tell him. Q. Then what did Mr. Barry say he would do? A. He would pay it all off.''

Again on redirect examination:

''Q.   Miss Mary, when you made the deed to Mr. Barry did he pay you any money? A. No, sir. Q. He simply agreed to pay all liens and claims against the property and leave you clear? A. I wasn't to have a dollar and wasn't to owe a dollar.''

In this testimony she is corroborated at least in part by the testimony of Mr. Hobbs. On this subject Mr. Hobbs testifies about the transaction as follows:

''I will give you all I can remember about it. When that assignment was made of the purchase my understanding was that Mr. Barry was to protect Miss Mary against any debts against the property. Q. Debts against the property? A. He was to hold her harmless, that is all I remember about it. I haven't any remembrance of the deed at all, and if there was ever any conversation about the deed in my presence why it has slipped my mind.''

This testimony of Miss Crosthwait is contradicted by that of Barry, but every circumstance corroborates her testimony  She had executed her note and the mortgage on these two lots to the Garth Educational Society, believing she was the owner of same; she had subsequently purchased one of the lots when it was sold to pay her father's debts, evidently to protect the title she

already had thereto. It certainly would have been a peculiar trade for her to assign her purchase of one lot to Barry in consideration of his paying only what she had agreed to pay to protect her title to same and then later execute a deed to him for both lots for no additional consideration whatever, leaving unsatisfied the note and a mortgage she had executed to appellee upon both lots, and for which she was bound in any event.

Barry took the assignment of her purchase on April 8, 1916; he didn't file it in the case and pay the purchase money into court until June 10, 1916, and he admits in his testimony he had his attorney to examine the title before he paid the purchase money and files with his deposition the report of his attorney, which was in writing and sets out not only the fact of the mortgage to appellee but also that the judgment and order of sale was erroneous because the debts of Mat Crosthwait, for which in large part the lots were ordered sold, were not as adjudged liens against the property. This was true, and yet appellant did not seek to have the sale set aside or corrected, as his attorney advised him he might do, so as to include both lots as he claims were sold by the master, although only one lot was reported sold.

Appellant purchased from Mary E. Crosthwait and took deed from her to both lots; and, as we think the evidence shows, in consideration of his assuming the payment of her mortgage to appellee, as well as the purchase price at the decretal sale.

The mortgage she had executed to appellee was certainly a valid lien against the property so long as the title was in her; and appellant having acquired title from her by deed as well as by assignment of her purchase with knowledge of appellee's recorded lien, upon agreement with her to satisfy the lien, cannot deny its validity and at the same time hold on to the property thus acquired.

Wherefore the judgment is affirmed.