## Anglo-American Mill Company v. Kentucky Bank & Trust Company.

(Decided March 22, 1932.)

BEVERLY B. WADDILL and C. J. WADDILL for appellant.

GORDON & GORDON & MOORE for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

The Kentucky Bank & Trust Company instituted an action against the Anglo-American Mill Company, G. E. Mansfield, Ellen Mansfield, Artie Choate, and D. R. Quinn, to collect an alleged debt due it. A judgment was rendered in favor of the bank, and the Anglo-American Mill Company has prosecuted an appeal. On February 24, 1927, G. E. Mansfield, Ellen Mansfield, and Artie Choate executed a note to D. R. Quinn for $2,350, payable in one year. The note was secured by a mortgage on three tracts of land located in Hopkins county and containing about 121½ acres. Quinn transferred the note to his wife, but it was reassigned to him before maturity. On September 2, 1927, the Mansfields and Choate, as parties of the first part, conveyed the land covered by the mortgage to the Anglo-American Mill Company as party of the second part, and the deed was recorded on September 20, 1927. The consideration for the conveyance was thus expressed in the deed:

> "The parties of the first part for and in consideration of the assumption by party of the second part of the Bertha Quinn realty lien note and its interest to date hereof amounting to Two Thousand Four Hundred and twenty ($2420) dollars, she being the assignee of David R. Quinn, and the further consideration of One Thousand and Eighty ($1080) dollars, paid to parties of the first part by crediting their indebtedness to party of the second part."

At the time the deed was executed an endorsement was placed on the back of the Quinn note in these words:

"We hereby accept the payment of this note as set forth in deed of September 2, 1927.

"The Anglo-American Mill Co.,
"Per M. M. Awty, Atty."

On September 27, 1927, the Kentucky Bank & Trust Company, for value, acquired from D. R. Quinn the note secured by the mortgage, which had been assumed by the Anglo-American Mill Company, as a part of the agreed consideration for the conveyance of the land covered by the mortgage. On October 4, 1927, the bank advised the Anglo-American Mill Company, by letter, that the bank was the owner of the note, which would be due February 24, 1928, and added:

"We note where this land has been transferred to you as per your endorsement on this note. Please advise us if you will be ready to pay this note at that time, or if you prefer, you can make payment at any time previous to February 24th."

No answer to this letter appears in the record, but on February 6, 1928, the bank again advised the mill company the date of maturity of the debt and requested remittance at that time. The mill company answered as follows:

"We have your favor of the 6th in regard to the above which note we assumed in order to protect ourselves.

"We find that there are some tax sales against this property which we now propose to remove.

"Business with us has improved so materially in the last three months that the result is we are working all of our liquid capital to its limit. At this time it would be something of a hardship to payoff this note so we are going to ask you if you let us renew it for six months. If you will do this kindly send us renewal note and with it a memorandum of the interest and we will return the note with our check for the interest for the year and the additional six months.

"Hoping you can grant us this favor, we are,
"Yours truly,
"L. Freeman Little, President."

The bank answered, acknowledging receipt of the letter and expressing disappointment that the mill company would not be able to take up the note at maturity. It offered, however, to grant a renewal on condition that the accumulated interest and $350 on the principal, and six months' interest on the remainder of the note, be paid at once. It advised also that it would not be necessary to send a new note, as the lien note could not be changed, and agreed to place the credit on the back of the note.

The mill company promptly accepted the offer and wrote:

"Thank you very much for yours of the 10th giving us six month's extension on the above.

"We are accepting your letter by enclosing our check for $551.00, for payment of the following items:

Payment on note ........................................................$350.00
Payment of interest to 2/24/28 ............................ 141.00
Payment of interest for six months in
    advance ..................................................................  60.00
                                                                          _____
                                                                          $551.00

"We note that you will place the credits on the back of the note.

"Won't you also kindly acknowledge receipt of this letter so that we can have a double check on same.

"We are

"Yours very truly.

"L. Freeman Little, President."

On August 27, 1928, the mill company wrote to the bank:

"Referring to note of G. E. Mansfield of which you have written us and which heretofore we have paid the interest on and part of the principal, we would be glad if you would let us pay you the interest on this note for a further six months. This note was due in your bank on August 24th.

"Very truly yours,

"L. Freeman Little, President."

The bank replied on August 28 that it would not be agreeable to renew the note, as the local demands on the bank required all of its available funds. Being unable to obtain a satisfactory settlement, the bank, on November 9, 1928, instituted the action already described. Quinn interposed a defense, but it need not be noticed. The Mansfields and Choate did not appear. The mill company filed a demurrer to the petition and a motion to require the plaintiff to elect whether it would proceed against the mill company upon the note filed with the petition, or upon the alleged assumption agreement embodied in the deed. Without awaiting the action of the court, the bank elected on October 30, 1929, to abandon the action on the note, and to stand upon the alleged agreement of assumption. On January 25, 1930, the mill company filed an answer, counterclaim, and cross-petition alleging, in substance, that it had been defrauded by its codefendants, and that its collecting attorney was not authorized to bind it by assuming the mortgage debt. The testimony tended to show that Awty was the attorney for a collection agency that held for collection a claim of the Anglo-American Mill Company against G. E. Mansfield. His testimony tended to show that a claim for collection was placed with the Credit Clearing House by the Anglo-American Mill Company and he was sent down there as the adjuster. In the first conversation with Mr. Mansfield at his mill it was found that he had no cash at the time. The mill company had a lien on the equipment and threatened to take it away from him. Finally it was agreed that he should have time to think about it before further action was taken. Mansfield said he had some property; that there was a first mortgage of $2,300 on it; that the property was worth at that time $4,500, but he was willing to sacrifice it for $3,500 in order to clear up his debt. He advised that the first mortgage was to Mr. Quinn. Awty left the town that night and went back the following day and talked to Mansfield again and then went over to see Mr. Quinn, who said that he had seen the property and it was worth $4,500, and that it had timber on it that could be sold for $2,500; that he had at that time two buyers and expected to close the deal in two weeks. He advised also that there was a good mine on the property. Awty communicated with the treasurer of the mill company, and finally agreed to accept the deed and assume the debt.

The deed was then executed, accepted, and recorded. There was testimony tending to show that the land was barren and worth at no time to exceed $500. It was located in Shake-rag, in a remote section of the county, and had been acquired by Mansfield for $550 on easy terms. It is likely that Quinn, and certain that Mansfield, knew the land was not worth as much as the amount of his mortgage lien.

The plaintiff's right to recover was rested upon the assumption agreement, and the question presented is whether such an agreement may be rescinded or relieved against under the circumstances detailed.

The lack of authority of the agent cannot avail the appellant. The acceptance of the deed foreclosed that question, and the benefits of the contract carried with it the burdens thereby imposed.

The mill company accepted the deed with full knowledge of the acts of the attorney, and that constituted a ratification of all that he had done. The company elected to accept the deed upon the representations made, and could not then complain that the authority of the attorney had been exceeded. Although it was not advised of the alleged fraud that had been perpetrated upon it, it was advised of all the facts known to the attorney, and of all the acts of the attorney respecting the matter. Elk Valley Coal Co. v. Thompson, 150 Ky. 625, 150 S. W. 817; Caddy Oil Co. v. Sommer, 186 Ky. 853, 218 S. W. 288; Detroit Fidelity & Surety Co. v. Gilliam, 237 Ky. 425, 34 S. W. (2d) 971.

The assumption agreement contained in the deed conveying the land was valid and binding, and entitled the holder of the mortgage debt to proceed directly against the grantee in the deed for its enforcement. 41 C. J. sec. 771, J. 725, E. P. 720, Sec. 805, p. 743; 19 R. C. L. sec. 145 p. 374; Colvin v. Newell, 8 Ky. Law Rep. 959; Gray v. Gilliam, 166 Ky. 194, 179 S. W. 22; Jones v. Higgins, 80 Ky. 409; Venable v. Thompson, 216 Ky. 721, 288 S. W. 669; Barry v. Garth Educational Society, 186 Ky. 455, 217 S. W. 674; Mize v. Barnes, 78 Ky. 506; The Home v. Selling, 91 Or. 428, 179 P. 261, 21 A. L. R. 403.

But the bank took title to the chose in action as assignee of the mortgagee and without impairment of defenses then existing on behalf of the grantee in the deed. Ky. Stats., sec. 474; Civil Code of Practice, sec.

19; Col. F. & T. Co. v. First National Bank, 116 Ky. 364, 76 S. W. 156, 25 Ky. Law Rep. 561; Hill v. Thixton, 94 Ky. 96, 23 S. W. 947, 14 Ky. Law Rep. 900.

We are thus brought to close quarters with the ultimate question whether one who assumes an obligation to pay a mortgage debt may, after acceptance of the assumption by the creditor, rescind or obtain cancellation of the contract because of fraud practiced in its procurement as against a good-faith purchaser, when the grantee, after ample time to investigate the facts and to determine his course, has ratified the agreement by recognition and part performance.

The problem bristles with difficulties, and the authorities are in hopeless conflict, as may be seen from a casual consideration of the text-books and reported cases. 19 R. C. L. Sec. 148, p. 378; 41 C. J. Sec. 826, p. 754; Smith v. Kibbe, 104 Kan. 159, 178 P. 427, 5 A. L. R. 483; Corkrell v. Poe, 100 Wash. 625, 171 P. 522, 12 A. L. R. 1524; Thacker v. Hubard & Appleby, 122 Va. 379, 94 S. E. 929, 21 A. L. R. 414, Annotation page 439; White v. Schader 185 Cal. 606, 198 P. 19, 21 A. L. R. 499; Lloyd v. Lowe 63 Colo. 288, 165 P. 609, L. R. A. 1918A, 999; Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672; Gifford v. Corrigan, 117 N. Y. 257, 22 N. E. 756, 6 L. R. A. 610, 15 Am. St. Rep. 508; Keller v. Ashford, 133 U. S. 610, 10 S. Ct. 494, 33 L. Ed. 667; Elliott v. Sackett, 108 U. S. 132, 2 S. Ct. 375, 27 L. Ed. 678; Drury v. Hayden 111 U. S. 223, 4 S. Ct. 405, 28 L. Ed. 408; Shepherd v. May, 115 U. S. 505, 6 S. Ct. 119, 29 L. Ed. 456; Union Mutual Life Ins. Co. v. Hanford, 143 U. S. 187, 12 S. Ct. 437, 36 L. Ed. 118.

It is not necessary for us to classify the cases, or to consider the rule prevailing here, since the events that occurred and the acts of the appellant subsequent to its assumption of the debt operated to preclude it from obtaining a rescission or cancellation of the contract. It is the law in this state that, in order to avail himself of fraud in the execution of a contract, the party attempting to avoid it must proceed within a reasonable time, and refrain from ratifying the contract, after he has discovered, or could have discovered by the exercise of reasonable diligence, the existence of the fraud. Cornett v. Kentucky River Coal Co., 175 Ky. 718, 195 S. W. 149; Culton v. Asher, 149 Ky. 659, 149 S. W. 946; Head v. Oglesby, 175 Ky. 613, 194 S. W. 793. Here the bank purchased the note secured by the mortgage nearly a month

after the deed containing the assumption agreement had been accepted and several days after it had been placed on record. It advised the appellant promptly of its purchase. Several months later the appellant made a substantial payment and obtained a long extension of time to meet the obligation. At the expiration of the extension granted, it sought further forebearance and at no time intimated that it had any defense to the claim, or intended to interpose any obstacles to its collection. It could have learned within a few days all the facts subsequently ascertained, and it would be inequitable to permit it to change positions to the prejudice of the bank. The renewal of a note afterwards alleged to have been procured by fraud, or obtaining an extension of time to pay it, has been held sufficient to preclude inquiry into the question of fraud in the original transaction. A. C. Morris & Co. v. Heaton, 235 Ky. 66, 29 S. W. (2d) 617; Cf. Cox v. Riggins, 223 Ky. 510, 4 S. W. (2d) 403.

This is a general principle of equity jurisprudence, and applies whenever a rescission of a contract, deed, or other instrument is sought, and particularly to a case of this character. 41 C. J. Sec. 775, p. 728.

It is also well settled that, when one of two innocent parties must suffer a loss, resulting from the wrongful act of a third party, and one of the innocent parties has put it in the power of the wrongdoer to bring about the situation, the loss is allowed to fall on the party whose neglect enabled the wrong to be accomplished. Stark v. Petty, 195 Ky. 445, 243 S. W. 50; Simmons v. Vaughn, etc., 165 Ky. 167, 176 S. W. 995; Gardner v. Commercial Security Co., 184 Ky. 164, 211 S. W. 405; Power Grocery Co. v. Hinton, 187 Ky. 171, 218 S. W. 1013; McConnon & Co. v. Evans 152 Ky. 491, 153 S. W. 773; Begley v. Combs, 106 S. W. 246, 32 Ky. Law Rep. 538; Meder v. Silver, 225 Ky. 733, 9 S. W. (2d) 1089.

Appellant argues that the matters suggested partake of the character of an estoppel, and, since no estoppel was pleaded, it is not available. But the appellant sought a cancellation or rescission of its contract of assumption of the mortgage debt, and the principles applied inhere in the remedy invoked. In order to obtain the relief requested, it was essential for the appellant to bring its case within the conditions that govern the remedy sought.

It follows that the circuit court committed no error in rendering a judgment in favor of the bank.

The judgment is affirmed.