### Hall's Executors v. Federal Land Bank of Louisville.

(Decided Nov. 26, 1937.)

740

ERNEST L. ZEIGLER for appellants.

BENTON & DAVIS, ROGER D. BRANIGAN, J. F. WILLIAM-SON, MARTIN R. GLENN and R. C. BUCKLES for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On April 4, 1922, Clayton Hisle and wife borrowed from the appellee and plaintiff below the Federal Land Bank of Louisville, Ky., $10,000, for which they executed their joint note,.in which semiannual installments of interest and similar payments on the principal were agreed to be made until the principal should finally be paid in 1955. To secure the note and all of its obligations, the parties executed and delivered to plaintiff a mortgage on a valuable tract of land in Clark county, Ky., containing about 121 acres, which was in a high state of cultivation. On December 3, 1923, the borrowers conveyed the mortgaged land to A. C. Rose, who agreed to and did assume the balance of the debt as a part of the consideration for his purchase, in both the deed that was executed to him and in a separate signed certificate, the latter of which was not legally necessary but only for evidentiary purposes in the records of the bank, the mortgagee.

On April 1, 1924, Rose and wife conveyed the mortgaged tract of land jointly to Mrs. Sally S. Hall of Maysville, Ky., and her nephew, Thomas H. Robinson, of Winchester, Ky. In the deed executed to them by Rose and wife, it was expressly stipulated and agreed that as a part of the consideration the vendees in it assumed the payment of the balance of the mortgage indebtedness. The other part of the consideration agreed to be paid by the vendees, in that deed from Rose and wife, consisted of conveyances to Rose by Mrs. Hall and by Robinson of parcels of real estate separately owned by them within or near to the corporate limits of the city of Winchester. The latter real estate was a remnant of a larger parcel that Mrs. Hall and her nephew had jointly acquired some years before and from which resident lots had been sold; but before the purchase of the farm from Rose, the remnant of the real estate jointly owned by Mrs. Hall and her nephew, as indicated, had been divided between them and they each executed deeds to Rose for their respective parcels (or parts of it) in defraying the consideration for the Rose farm over and above the amount of the mortgage to defendant. Robinson was put in charge of the Rose farm, but Mrs. Hall through her son, one of her present executors, William H. Hall, exercised some supervisory control on behalf of his mother, who it seems was more or less of an invalid, and very much attached to her nephew, Robinson, whom she had favored and assisted in many ways. Likewise, William H. Hall, as the representative of his mother, inspected the Rose farm before it was purchased by Mrs. Hall and her nephew, and according to the testimony of the latter (Robinson) William H. Hall, as the representative of his mother, left it entirely with him (Robinson) as to whether the trade should be completed as later made, and consented for his mother that it should be done if Robinson should conclude to do so. He did so conclude and the transaction was completed as indicated. Later the separate certificate of assumption of the debt by Mrs. Hall and Robinson was executed for office use of the mortgagee, but the signature of Mrs. Hall thereto was made by Robinson. The deed that had been executed was also delivered to him, but he did not put it to record. After obtaining it he managed the farm, sometimes renting it, or parcels of it, to tenants, and sometimes cultivating it by the assistance of hired help. He was slow about keeping up the

payments due on the mortgage, and on occasions Mrs. Hall was compelled to and did contribute her part to meet such obligations, and there are letters in the record from William H. Hall, apparently representing his mother's interests, written to Robinson and other parties with reference to mortgage payments, all of which strongly indicates a perfect familiarity with the terms upon which Mrs. Hall and Robinson acquired the property from Rose.

Mortgage obligations were in default in 1930, and the bank precipitated the due date of the entire debt and sued the mortgagors and all of the subsequent assumers of the note in the Clark circuit court to foreclose its lien and to obtain judgment against them personally. Mrs. Hall was duly served in that action, and by default personal judgment went against her and all of the other defendants with an order of sale of the land to satisfy it. Within a short while thereafter, as a result of negotiations for that purpose, it was agreed by the bank that if past-due defalcations were paid it would set aside the judgment and dismiss the action without prejudice —all of which was done. However, other defalcations began to be made, and on July 8, 1932, this action was filed by plaintiff against the original makers of the note, and all subsequent assumers thereof, including Mrs. Hall and her nephew, Robinson, the same as was done in the first suit filed in 1930. In the latter and instant petition the same relief was sought against all of the defendants named therein. None of them made defense except Mrs. Hall. She pleaded that she never intended, in agreeing to make the exchange of lands with Rose whereby his farm was conveyed to her and her nephew, to assume any personal liability, but only to become the vendee of the equity in the Rose farm after the mortgage on it held by defendant was paid, and that she never knew that the deed contained a contrary stipulation whereby she personally assumed the payment of plaintiff's debt, until plaintiff attempted to enforce it against her. Following pleadings made the issues upon that contention. In the meantime Mrs. Hall died testate, and in her will she named her son, William H. Hall, and the appellant, Howard Curtis, as her executors, and both of them qualified. The action was then revived in their names. In the meantime, and apparently with consent of all parties, personal judgment was rendered against all other defendants except Mrs. Hall and an

order for the sale of the land was made. The master commissioner who made it filed his report, and after crediting the note by the net amount realized there was a balance due on it of $3,223.46, for which amount judgment was finally rendered against the personal representatives of Mrs. Hall's estate, and to reverse it they prosecute this appeal.

At the outset it should be noted and remembered. that neither Mrs. Hall before her death, nor her personal representatives after that event by any pleading filed by them, seek a reformation of the deed executed. by Rose and wife to her and her nephew wherein they, as vendees, assumed the mortgage indebtedness, so as to make its terms conform to the defense Mrs. Hall interposed; nor was there any pleading filed in the cause charging plaintiff, or any representative of it, with the commission of fraud in procuring the deed, although it. *was* alleged that the obligatory terms contained in the deed, whereby Mrs. Hall personally assumed the payment of the mortgage debt, were incorporated therein by mistake. But it is not made clear as to whose mistake the pleader referred, i. e., that of Mrs. Hall or of her nephew. At any rate, the allegation as so made was not followed by any prayer for reformatory relief and left the defense made by Mrs. Hall as consisting only of (a) that her nephew in agreeing that he and she would assume plaintiff's debt (as is inserted in the deed) did so without authority from her, and (b) that she did not learn of that stipulation until the first suit. supra was filed against her—and in which personal judgment against her was obtained by default. The issues, therefore, become mainly, if not exclusively, ones of fact which the trial court determined from the evidence against her executors, and which we are not authorized to disturb—under well-established rules of practice in this court—unless we are convinced from. the proof that such fact findings by the chancellor are not supported by the testimony and are not authorized by the law.

The differences pointed out in the pleadings widely differentiate this case from that of Louisville Joint Stock Land Bank v. Kenner, 255 Ky. 44, 72 S. W. (2d) 751. In that case the contesting defendant resisted personal liability upon the ground that the assumption clause upon which such liability was rested was inserted in the deed by fraud or mutual mistake and he sought:

a reformation thereof, so as to convert it into a mortgage. We held that the testimony in the case supported that contention, and which a review by us of the record in that case again convinces us that our conclusion was correct. Quite different are the facts of this case.

While it is true that no one expressly testified that Mrs. Hall ever actually saw the deed executed to herself and her nephew, yet it is in proof that it was sent to Maysville where she resided for her inspection, and it is also in proof that her son, as her representative, consented for the deed to be made as it was finally executed provided Robinson should conclude to do so, which he did. We have also the fact that Mrs. Hall suffered a judgment to go against her for the same debt sought to be collected in this case, but through the solicitation of her joint owner and quasi partner (her nephew), that judgment, in consideration of certain payments, was set aside and the action was dismissed without prejudice. Such dismissal robbed that judgment of the effects of a judicial determination of the fact in issue, but it did not destroy the force and effect of the fact of the judgment having been taken, as evidence of the further one that Mrs. Hall did agree to assume the debt as stipulated in the Rose deed; for if it were not so it would have constituted a defense to *that* action the same as it would serve that purpose in this instant but later one based upon the same subject-matter.

In addition to all the foregoing, Mrs. Hall and her nephew owned the land for eight years and operated it as joint owners during that time without ever a breath from her or from her son—who largely if not entirely managed her affairs—that she was only a joint owner of the equity in the farm purchased, after the mortgage debt had been satisfied. Such facts furnish a strong presumption—if not a conclusive one—that a vendee in the situation of Mrs. Hall was aware of the contents of the deed conveying to her whatever title she had, and that presumption has not been overcome by any proof in this case. Nor are we prepared to say that she was not bound by the knowledge of her covendee or copartner in respect thereto; but which point is not necessary to be determined, and for which reason it will not be done. See cases post.

Argument is made in brief for appellants that a purchaser of land subject to a mortgage does not become personally bound for the mortgage debt without

an express undertaking to that effect, which is emphatically true, but none of the cases so declaring apply to the facts of this record because there was an express agreement in the Rose deed for the vendees to assume the balance owing on plaintiff's debt. That deed was accepted by one of them, and if the other one did not acquaint herself with the contents thereof for a period of eight years—during which time the deed was not fraudulently concealed from her—the negligence in failing to do so would come near to, if not actually ripen into, laches barring the right to insist to the contrary. Authorities supporting the views herein expressed may be found in the cases of Anglo-American Mill Co. v. Kentucky Bank & Trust Company, 243 Ky. 124, 47 S. W. (2d) 951; White v. Upton, 255 Ky. 562, 74 S. W. (2d) 924, and numerous others cited in those opinions. Those cases determined against appellant's contention all questions of law involved in this case, and the testimony that we have narrated, as we conclude, is amply sufficient to support the chancellor's finding of facts upon which he rendered judgment against the estate of Mrs. Hall upon the theory that she became personally bound for plaintiff's debt because of the agreement to assume it contained in the deed executed to her and her nephew as joint owners.

Appellants make slight complaint of the court disallowing a credit of $500 claimed to be due to the mortgagor because of certain stock he was required to subscribe for, but it is clearly shown that such pro tanto defense was unmeritorious, since the alleged credit was properly accounted for.

Wherefore, the judgment is affirmed.