RENDERED: OCTOBER 24, 2024
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2023-SC-0568-DG

KENNETH L. RAMSEY; RAMSEY FARM, INC.; AND SARAH K. RAMSEY      APPELLANTS

ON REVIEW FROM COURT OF APPEALS
V.      NO. 2022-CA-1306
FAYETTE CIRCUIT COURT NO. 14-CI-02669

DAPPLE STUD, LLC; MIKE AKERS, INDIVIDUALLY AND MIKE AKERS, INC. D/B/A DAPPLE BLOODSTOCK; AND DAPPLE SALES, LLC      APPELLEES

AND

## 2023-SC-0569-DG

HICKSTEAD FARM, INC.      APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.      NO. 2022-CA-1284
FAYETTE CIRCUIT COURT NO. 14-CI-01698

DAPPLE STUD, LLC; MIKE AKERS, INDIVIDUALLY; MIKE AKERS, INC. D/B/A DAPPLE BLOODSTOCK; AND DAPPLE SALES, LLC      APPELLEES

**OPINION OF THE COURT BY CHIEF JUSTICE VANMETER**

**<u>AFFIRMING IN PART AND REVERSING IN PART</u>**

By statute, a limited liability company acts either through its members or its managers. When it is managed by managers, every manager is an agent of the company and shall bind the limited liability company by any act for apparently carrying on in the usual way the company's business or affairs. KRS[1] 275.135(2)(b). The primary issue we resolve in these cases is whether the Court of Appeals erred in affirming the Fayette Circuit Court's summary judgment in favor of Dapple Stud, LLC and Dapple Sales, LLC and against Ramsey Farms[2] and Hickstead Farms, Inc. on Ramsey and Hickstead's claims for breach of contract arising from horse consignment contracts. At the time the consignment contracts were agreed, Dapple Stud's and Dapple Sales' longtime manager was Mike Akers, who apparently misappropriated moneys from Dapple Sales' checking account into which sale proceeds had been deposited. Akers' post-sale actions, however, do not alter Dapple Stud's obligations under its contracts with Ramsey and Hickstead. We hold that the lower courts did err, and therefore reverse in part and affirm in part and remand to the Fayette Circuit Court for further proceedings consistent with this opinion.

---

[1] Kentucky Revised Statutes.

[2] The original plaintiffs in Ramsey's complaint were Kenneth L. Ramsey, his wife, Sarah K. Ramsey, and Ramsey Farm. We refer to these appellants collectively as "Ramsey."

## I.  FACTUAL AND PROCEDURAL BACKGROUND

These cases arise from disputes involving the sale of horses.  Ramsey and Hickstead separately entered into agreements with Dapple Stud to sell some of their horses.[3]  Dapple Stud is a Kentucky limited liability corporation that deals almost exclusively in thoroughbred horses.  While the parties dispute whether Akers was a member of Dapple Stud at the time these agreements were entered with Hickstead and Ramsey, the record is clear that Akers was the manager both of Dapple Stud, and of its wholly owned subsidiaries, Dapple Sales, LLC and Dapple Boarding, LLC, all Kentucky limited liability companies.

Ramsey's agreement with Dapple Stud consisted of Dapple Stud, as consigning agent, selling seven of Ramsey's horses at the Fasig-Tipton October 2013 Fall Yearling Sale and at the Fasig-Tipton Midlantic 2013 December Mixed Sale in exchange for a commission from the sales proceeds.  The contracts were for Dapple Stud, as consigning agent, to sell the horses in exchange for a flat sales fee of $1,500 and 3% commission on proceeds over $20,000.  These transactions were consistent with prior dealings between Ramsey and Dapple Stud.  Ramsey listed Dapple Stud as its agent on the "Authorization of Agent" forms with Fasig-Tipton.  Email correspondence between Ramsey and Stuart Morris, who corresponded with a "dapple.net"

---

[3] Ramsey and Hickstead filed separate lawsuits in the Fayette Circuit Court against Dapple Stud.  These cases were consolidated at the Court of Appeals due to the common factual issues.

email address, confirmed the sale of Ramsey's horses. The sales catalog for the horses listed "Consigned by Dapple Stud, Agent." After the horses were sold, Fasig-Tipton sent checks to Dapple Stud as payee totaling $161,084.35. The largest check, in the amount of $145,172.50, was payable to "Dapple Stud," but the accompanying statement shows that it was for the sale of Ramsey's colt by Kitten's Joy out of Imari (JPN); the two smaller checks were payable to "Dapple Stud, Agent for: Ramsey Farm." In accordance with Dapple Stud's usual operating procedure, the checks were deposited to Dapple Sales' checking account. Following those deposits, Akers apparently transferred these funds to his personal or business accounts with the result that Ramsey was not paid.

Hickstead's agreement with Dapple Stud was similar. It consisted of Dapple Stud agreeing to sell two of Hickstead's horses at the September 2013 Keeneland sale. The contracts were for Dapple Stud, as consigning agent, to sell the horses in exchange for a flat sales fee of $1,500 and 3% commission on proceeds over $20,000. These transactions were consistent with prior dealings between Hickstead and Dapple Stud. Hickstead listed Dapple Stud as its agent on the "Authorization of Agent" forms with Keeneland. Both horses were sold and Keeneland issued a check to "Dapple Stud, Agent I" for the proceeds of the sale of the horses, in the amount of $513,500, the gross sales amount less Keeneland's charges. Thereafter, Keeneland's check was deposited into Dapple Sales' bank account. Akers sent a letter on Dapple Stud letterhead to Hickstead with a statement of the sale. According to an affidavit from Jeffrey

4

Bowen, one of Dapple Stud's managing members, Hickstead was owed $495,000, net of Dapple Stud's commission and expenses. Dapple Sales subsequently remitted $294,482 to Hickstead, leaving an unpaid balance of $200,518. Bowen alleged that Akers wrote a check from Dapple Sales' account to his separately owned corporation, Mike Akers, Inc., which had adopted the assumed name of Dapple Bloodstock.

In May 2014, Hickstead sued Dapple Stud seeking damages based on claims of: (1) theft by failure to make required disposition of property; (2) conversion; (3) fraud; (4) breach of fiduciary duty; and (5) breach of contract. In July 2014, Ramsey also sued asserting the same claims against Dapple Stud.[4] The two cases were consolidated.

Dapple Stud filed a motion for leave to file a third-party complaint against Akers, but trial court denied the motion. Three years later, Dapple Stud filed another motion for leave to file a third-party complaint against Akers, and the trial court granted its motion.[5] Hickstead and Ramsey did not file a claim against Akers until March 2020.[6] The trial court denied their motions because the causes of action were, by that time, barred by the applicable statute of limitations.

---

[4] In 2017, Hickstead and Ramsey would amend their complaints to include Dapple Sales.

[5] Dapple Stud later voluntarily dismissed its third-party claim against Akers.

[6] Hickstead and Ramsey's complaint against Akers included nine causes of action: theft by failure to make disposition of property, conversion, fraud, breach of fiduciary obligations, breach of contract, restitution and money had and received, contract implied at law, unjust enrichment, and punitive damages.

In 2014, both Hickstead and Ramsey sought partial summary judgment on their respective breach of contract claims, based, in part, on "Authorization of Agent" forms submitted to the sales companies. Dapple Stud was not a signatory on these forms. The trial court granted summary judgment for Hickstead and Ramsey on the breach of contract claim because Akers had authority to bind Dapple Stud in contract and the "Authorization of Agent" forms were a contract.

The Court of Appeals vacated the partial summary judgment in favor of Hickstead and Ramsey. *Dapple Stud, LLC v. Ramsey*, 2015-CA-0385-MR, 2015-CA-0592-MR (Ky. App. Sept. 2, 2016).[7] The Court of Appeals held that the agent authorization agreements are not contracts with Dapple Stud, but instead contracts with the sales companies, Fasig-Tipton and Keeneland. The Court of Appeals ultimately determined that the then factual record was insufficiently developed as to the definite and certain terms of the contract between the parties. *Id.*, slip op. at 14-15.

Following remand, all parties filed motions for summary judgment. Dapple Stud argued it did not receive or deposit the sales proceeds. Dapple Sales argued Akers deposited the sales proceeds into its bank account only to immediately withdraw the funds and transfer them to his own personal and business accounts. Dapple Sales also argued the conversion and theft claims were barred by statute of limitations. Ramsey and Hickstead renewed their

---

[7] Following a Petition for Rehearing, finality attached in June 2017.

motions with additional proof of contractual terms. The trial court agreed with Dapple Stud's and Dapple Sales' arguments and granted their motions for summary judgment and denying Ramsey's and Hickstead's. The trial court also required Hickstead and Ramsey to pay restitution to Dapple Stud because, before Hickstead and Ramsey's partial summary judgment for the breach of contract claim was overturned by the Court of Appeals, Dapple Stud had paid, at least in part, the sale proceeds to Hickstead and Ramsey.

The Court of Appeals affirmed the trial court's judgments.[8] *Hickstead Farms, Inc. v. Dapple Stud, LLC*, 2022-CA-1284-MR, 2022-CA-1306-MR (Ky. App. Dec. 1, 2023). Ramsey and Hickstead then sought discretionary review from this Court, which we granted.

## II. STANDARD OF REVIEW

As noted, we have often stated that "[t]he proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether the record, when examined in its entirety, shows there is 'no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.'" *Bruner*, 677 S.W.3d at 269 (quoting CR[9] 56.03) (emphasis added); *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010). "The record must be viewed in a light most favorable to the party opposing the motion for

---

[8] In summary, those court orders include: the Court of Appeals affirming the circuit court's rulings; the circuit court's summary judgment ruling in favor of Dapple Stud and Dapple Sales; the circuit court's order requiring Hickstead and Ramsey pay restitution to Dapple Stud; and the circuit court's dismissal of Hickstead and Ramsey's third-party complaint against Akers.

[9] Kentucky Rules of Civil Procedure.

summary judgment and all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). "Only when it appears impossible for the nonmoving party to produce evidence at trial warranting a judgment in his favor should the motion for summary judgment be granted." *Id.* at 482. A motion for summary judgment at the trial court, and on appeal, presents only a question of law, thus we review *de novo* and give no deference to the lower courts. *Patton v. Bickford*, 529 S.W.3d 717, 723 (Ky. 2016). In this matter, all parties filed motions for summary judgment. While we have not formally interpreted CR 56 in such instances as formal admissions that bind the parties to the factual record, *see Commonwealth v. Thomas Heavy Hauling, Inc.*, 889 S.W.2d 807, 808-09 (Ky. 1994) (stating that "[t]he filings of cross-motions for summary judgment do not always mean that the parties have consented to a resolution of the case on the existing record; nor is the trial court necessarily at liberty to treat the case as if it were submitted for a final resolution on a stipulated record[]"), our thorough review of this record discloses no disputed issues of material fact.[10]

---

[10] While we recognize on motions for summary judgment, a trial court's factual findings and conclusions of law are entitled to no deference on appellate review, such findings and conclusions are nevertheless helpful. For example, in this case, the trial court entered one-page orders merely granting or denying. We are left to wonder what the trial court based its decisions on: insufficient proof regarding the contractual terms; whether Dapple Stud entered a contract; whether Dapple Stud and Dapple Sales were bound by Akers' actions; or what? That leads us to the Court of Appeals' perfunctory four and one-half page opinion, two pages of which consisted of a block quote from its prior 2016 opinion. As aptly noted by Ramsey and Hickstead, the Court of Appeals, presented with the parties' well-written, well-documented appellate briefs, replete with facts, citation to the record and legal authority, failed to cite a single statute, rule, or case. That Court, in essence, summarily affirmed the trial court. Our obligation, as appellate courts, is to determine "whether the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving

Furthermore, in *Versailles Farm Home & Garden, LLC v. Haynes*, we stated that the issue of contract formation is a question of law, subject to *de novo* review, when the relevant facts, as in these cases, are undisputed. 647 S.W.3d 205, 209 (Ky. 2022) (citing *Baumann Paper Co. v. Holland*, 554 S.W.3d 845, 848 (Ky. 2018)).

### III.   ANALYSIS

#### A. Contract Formation.

The initial issue in this case is whether Ramsey and Hickstead have established that they each had a contract for the consignment and sale of their horses with Dapple Stud. To prove the existence of a contract, a plaintiff must show an "offer and acceptance, full and complete terms and consideration." *Energy Home, Div. of S. Energy Homes, Inc. v. Peay*, 406 S.W.3d 828, 834 (Ky. 2013) (quoting *Commonwealth v. Morseman*, 379 S.W.3d 144, 149 (Ky. 2012)). The terms of the contract "must be sufficiently complete and definite to enable the court to determine the measure of damages in the event of a breach." *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997) (citing *Mitts & Pettit, Inc. v. Burger Brewing Co.*, 317 S.W.2d 865 (Ky. 1958)). However, "[i]t is settled beyond controversy that an agreement … need not be expressed, but may be 'implied from a course of dealing or other circumstances.'" *Frey & Son v. Cudahy Packing Co.*, 256 U.S. 208, 216 (1921) (quoting *United States v. Schrader's Son, Inc.*, 252 U. S. 85, 99 (1920)); *see also Giem v. Searles*, 470

---

party is entitled to a judgment as a matter of law" and "without deference to either the trial court's assessment of the record or its legal conclusions." *Bruner v. Cooper*, 677 S.W.3d 252, 269 (Ky. 2023) (citation omitted).

9

S.W.2d 327, 328-29 (Ky. 1971) (holding that even though a series of errors with respect to prices existed, the course of dealings amongst the parties indicated the intention of the parties). Even with no written contract that lays out the complete and definite terms of the contract, documentation supports that the intention of the parties was to "base [their] judgment on the custom the parties had followed in prior transactions." *Giem*, 470 S.W.2d at 329.[11]

In these cases, the terms of the contracts are not in doubt. The sellers each contracted with a consigning agent to sell horses at auction, with the consigning agent receiving a flat fee of $1,500 per horse with an additional commission of 3% for any amount over $20,000. Affidavits from Stuart Morris, former Director of Sales for Dapple Stud and/or Dapple Sales,[12] from Mark

---

[11] Recently, this Court decided *Normandy Farm, LLC v. Kenneth McPeek Racing Stable, Inc.*, ___ S.W.3d ___, 2024 WL 3929543 (Ky. Aug. 22, 2024) (finality attaching Sept. 12, 2024) interpreting KRS 230.375(11) which requires contracts or agreements for the payment of a commission, fee, gratuity or any other form of compensation in connection with any sale of an equine to be writing and signed by the party against whom enforcement is sought. While these cases may have implicated the statute, neither Ramsey nor Hickstead, the parties against whom enforcement of the commission would be sought by Dapple Stud, pled the statute in their respective complaints. In fact, each sought remittance of the sales proceeds to which it was entitled in excess of the agreed fee/commission. *See* Hickstead Compl., Count V, Fayette Circuit Ct., No. 14-CI-1698; Ramsey Compl., Count V, Fayette Circuit Ct., No. 14-CI-2669. The record also reflects Ramsey and Hickstead sought additional damages as well.

[12] Dapple Stud attempts to dispute whether Morris was employed by it or Dapple Sales by claiming he was actually employed by Dapple Bloodstock, the assumed name of Mike Akers, Inc. It, however, presents no proof to counter that in 2013, Morris received a W-2 from Dapple Boarding, LLC. This confirms Leaver's affidavit that Dapple Stud's, Dapple Sales', and Dapple Boarding's employees were paid through an outside payroll provider using money from one of the two Dapple Stud subsidiaries.

10

Leaver, Dapple Stud's former comptroller, and various sales proceeds and expense statements confirm the contractual terms.

Dapple Stud argues that it did not have a valid contract with either, that it never received any proceeds from the sales, and that Akers had impermissibly used the name "Dapple Stud" in selling these horses on his own and subsequently defrauding the owners. This argument thus leads to whether these contracts were with Dapple Stud or with Akers in some other capacity.

### B. Akers was Dapple Stud's manager and thereby authorized and empowered to transact business on its behalf.

As to an LLC manager's authority, KRS 275.135(2) is clear:

> (2) If the articles of organization provide that management of the limited liability company is vested in a manager or managers:
>
> (a) No member, solely by reason of being a member, shall be an agent of the limited liability company; and
>
> (b) Every manager shall be an agent of the limited liability company for the purpose of its business or affairs, and the act of any manager, including, but not limited to, the execution in the name of the limited liability company of any instrument, for apparently carrying on in the usual way the business or affairs of the limited liability company of which he is the manager shall bind the limited liability company, unless the manager so acting has, in fact, no authority to act for the limited liability company in the particular matter, and the person with whom the manager is dealing has knowledge or has received notification of the fact that the manager has no such authority.

While analyzing this matter under general principles of agency law might be enlightening, KRS 275.135(2) is dispositive. Both Dapple Stud and Dapple Sales, by their articles of organization, were to be manager managed. Under subsection (b), every manager is an agent of the LLC for purposes of its

11

business, and the act of any manager, "for apparently carrying on in the usual way the business or affairs of the [LLC] of which he is the manager shall bind the [LLC]." KRS 275.135(2)(b) (emphasis added). The following clause excepts out acts for which the manager in fact has no authority, but only if the person with whom the manager is dealing has knowledge of or notification of the lack of authority. Dapple Stud nowhere claims that Ramsey or Hickstead had knowledge or actual notice that Akers was acting without authority.[13]

The record is undisputed that Ramsey and Hickstead had prior relationships with Dapple Stud and knew Akers to be its manager and Stuart Morris to be its director of sales. They each contracted with Dapple Stud multiple times without incident to consign their horses for sale at auction with

---

[13] If we looked solely at agency law principles, we would reach the same result, since "agency is the fiduciary relation which results from the manifestation of consent by one person [the principal] to another [the agent] that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 591 (Ky. 2012) (quoting *Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 50 (Ky. 2003)).

An agent has actual authority "to take action designated or implied in the principal's manifestations to the agent and acts necessary and incidental to achieving the principal's objectives, as the agent reasonably understands the principal's manifestations and objectives when the agent determines how to act." *Ping*, 376 S.W.3d at 594 (quoting RESTATEMENT (THIRD) OF AGENCY § 2.02 (2006)); *see also Kindred Healthcare, Inc. v. Henson*, 481 S.W.3d 825 (Ky. App. 2014) (holding that actual authority arises from a direct, intentional granting of specific authority from a principal to an agent). An agent has apparent authority to enter transactions on the principal's behalf with a third party "when the principal has manifested to the third party that the agent is so authorized, and the third party reasonably relies on that manifestation. The principal will then be bound by such a transaction even if the agent was not actually authorized to enter it." *Ping*, 376 S.W.3d at 594 (citing *Mill St. Church of Christ v. Hogan*, 785 S.W.2d 263 (Ky. App. 1990)); *see Anglo-American Mill Co. v. Ky. Bank & Tr. Co.*, 243 Ky. 124, 131, 47 S.W.2d 951, 954 (1932) (holding that "when one of two innocent parties must suffer a loss, resulting from the wrongful act of a third party, and one of the innocent parties has put it in the power of the wrongdoer to bring about the situation, the loss is allowed to fall on the party whose neglect enabled the wrong to be accomplished[]").

either Fasig-Tipton or Keeneland. For example, Hickstead produced letters and statements from Dapple Stud signed by Akers. The letters include time periods between 2011 to 2014. In each of the letters, the total proceeds from the sale are listed along with net proceeds. A statement also itemized the relevant charges explaining the total amount of proceeds Hickstead was to receive from Dapple Stud. Ramsey's proof did not include any examples of letters, but Morris's affidavit indicates that the letter and statement process is commonplace for horse sales. Ramsey did include email correspondence including with Akers that provides evidence to support that Ramsey had a history of working with Dapple Stud. Ramsey went through the same process with regards to getting agent authorization for the sale company as Hickstead. Ramsey also had checks issued to Dapple Stud similarly to those issued for Hickstead sales. So, even though Ramsey does not have letters and statements of prior horse sales, circumstantial evidence indicates that Ramsey had also done previous horse sales with Dapple Stud.

The "carrying on in the usual way the business" of Dapple Stud and Dapple Sales was for horses to be consigned with Dapple Stud listed as consigning agent. Following sale, the sales company would send a check for the sales proceeds, net of sales company fees and expenses, to Dapple Stud, which it would then deposit to Dapple Sales checking account. Thereafter, Dapple Sales would deduct the expenses, fees, and commission due to Dapple Stud and/or Dapple Sales and remit the net sales proceeds to the sellers. To be clear, once Dapple Stud received the sales companies' checks and

13

negotiated them to Dapple Sales, it in fact received the sales proceeds and was thereby obligated to remit the proceeds, net of its contracted fees, commissions, and expenses, to the sellers. The fact that Akers subsequently misappropriated funds from Dapple Sales is simply immaterial.

Dapple Stud argues Akers had no actual authority because he was no longer a member of Dapple Stud when he entered into the agreements with Hickstead and Ramsey. Regardless of whether Akers was a member, the parties' course of dealing demonstrates that Dapple Stud held Akers out as its manager. Dapple Stud's pleadings and its public filings all support that the other individuals connected with Dapple Stud and Dapple Sales took no steps to remove Akers from authority until sometime in 2014. This, of course, was after the consignment sales agreements had been entered into and fully performed, excepting, of course, the full remit of the sale proceeds to Ramsey and Hickstead, respectively.

The record in this case conclusively demonstrates that Ramsey and Hickstead each had valid consignment contracts with clear terms with Dapple Stud for the sale of horses, which Dapple Stud breached by its failure to remit net sales proceeds to Ramsey and Hickstead respectively. We therefore reverse the trial court's summary judgment rulings in favor of Dapple Stud and Dapple Sales. Our reversal necessarily also reverses the trial court orders requiring Hickstead and Ramsey to pay restitution. On remand, the trial court is to determine the principal amounts owed Ramsey and Hickstead, including pre- and post-judgment interest.

14

### C. *Breach of Fiduciary Duty Claims.*

Because Dapple Stud was the consigning agent for Ramsey and Hickstead, it follows as a matter of agency law, that it had fiduciary obligations towards its principals. *See Deaton v. Hale*, 592 S.W.2d 127, 130 (Ky. 1979); *Chernick v. Fasig-Tipton Ky., Inc.*, 703 S.W.2d 885, 889-90 (Ky. App. 1986); *see also Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1312 (11th Cir. 2014) (recognizing consignor's fiduciary obligations); *Cristallina S.A. v. Christie, Manson & Woods Int'l, Inc.*, 117 A.D.2d 284, 292 (N.Y. 1986) (auction house has fiduciary duty to act in good faith and interest of its consignors). As a result, the trial court erred in dismissing these claims by Ramsey and Hickstead. On remand, the trial court must determine whether the breach of these duties entitle Ramsey and/or Hickstead to punitive damages or attorney's fees.

### D. *The third-party complaints were untimely.*

Hickstead and Ramsey argue the trial court erred in barring their motions for third-party complaints against Dapple Sales, Akers, and MAI. We agree with the circuit court and hold that Hickstead and Ramsey are time-barred by the applicable statute of limitations. We address Hickstead and Ramsey's motion for third-party complaint against Dapple Sales first.

#### 1. Dapple Sales

The trial court did not bar all Hickstead and Ramsey's claims against Dapple Sales, it only barred the conversion and theft claims. Hickstead and Ramsey asserted conversion, for money had and received, against Dapple Sales

which has a three-year statute of limitations. KRS 355.3-118(7). As for theft, "[a]n action for the taking, detaining or injuring of personal property, including an action for specific recovery" has a two-year statute of limitations. KRS 413.125.

Here, the latest the horses were sold was in December 2013. Hickstead and Ramsey did not bring their claims against Dapple Sales until July 2017. Their motion was filed outside the statute of limitations for conversion over seven months and for theft by one year and seven months.

For those reasons, we affirm the circuit court's order dismissal of the conversion and theft claims against Dapple Sales.

## 2. Akers and MAI

The trial court barred all nine causes of action brought against Akers and MAI. Those causes of actions included: (1) theft by failure to make disposition of property, (2) conversion, (3) fraud, (4) breach of fiduciary obligations, (5) breach of contract, (6) restitution and money had and received, (7) contract implied at law, (8) unjust enrichment, and (9) punitive damages. The statute of limitations for these nine causes of actions range between one to five years. *See* KRS 413.120(2) (recovery of stolen property under KRS 446.070; 5 years); 355.3-118(7) (conversion, 3 years); 413.120(11) (fraud; 5 years); 413.120(6) (breach of fiduciary duty and unjust enrichment; 5 years); 413.120(1) (breach of oral or implied contract; 5 years). The other causes of action are remedies and cannot survive without "a claim which actual damages [that] can be awarded." *Ammon v. Welty*, 113 S.W.3d 185, 188 (Ky. App. 2002).

16

As established above the latest the horses were sold was December 2013. Hickstead and Ramsey did not file their motions for a third-party complaint against Akers and MAI until March 2020. Almost seven years after the sale of the horses. The circuit court did not err in denying their motions because all causes of actions were barred by their applicable statute of limitations.

The relation-back doctrine does not save these causes of actions against Dapple Sales or Akers because Hickstead and Ramsey cannot meet the mistake element of CR 15.03. CR 15.03 requires, in part, "but for a mistake concerning the identity of the proper party, the action would have been brought against him." Hickstead and Ramsey cannot state that failing to include Akers initially was a mistake because they dealt with Akers directly in entering into the agreements for the sale of horses. Further, based on the course of dealing between Ramsey and Hickstead with Dapple Stud, it would also not be a mistake to not name Dapple Sales. Morris indicated that the proceeds from a sale are transferred to the Dapple Sales bank account and a check is issued from Dapple Sales to Ramsey or Hickstead. Both Hickstead and Ramsey would have been aware that Dapple Sales was involved in the transaction involving horse sales. For those reasons, the relation-back doctrine would not apply, and this Court upholds the trial court's ruling barring the specific claims against Dapple Sales and all the claims against Akers.

## IV.  CONCLUSION

In conclusion, we reverse the Court of Appeals' opinion affirming summary judgment in favor of Dapple Stud and Dapple Sales and remand this

17

case for further proceedings consistent with this Opinion. We also reverse the orders for Hickstead and Ramsey to pay restitution, including pre- and post-judgment interest. However, we affirm the Court of Appeals' opinion upholding the Fayette Circuit Court's denying the third-party complaint against certain causes of action against Dapple Sales and all causes of action against Mike Akers.

All sitting. Bisig, Conley, Lambert, Nickell, and Thompson, JJ., concur. Keller, J., concurs in result only.

COUNSEL FOR APPELLANTS,
KENNETH L. RAMSEY; SARAH K. RAMSEY;
RAMSEY FARM, INC.; AND HICKSTEAD FARM, INC.:

Michael D. Meuser
Elizabeth C. Woodford
Miller, Griffin & Marks, P.S.C.


COUNSEL FOR APPELLEES,
DAPPLE STUD, LLC; AND DAPPLE SALES, LLC:

Thomas D. Bullock
Rachele T. Yohe
Bullock & Coffman, LLP


COUNSEL FOR APPELLEES,
MIKE AKERS, INDIVIDUALLY, AND MIKE AKERS, INC.
D/B/A DAPPLE BLOODSTOCK:

Griffin Terry Sumner
Nolan M. Jackson
Kathryn B. Kendrick
Frost Brown Todd LLP